UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

SHERIE WHITE,

        Plaintiffs,

   v.

DIVINE INVESTMENTS, INC.;
WALTER B. RICHEY; CAROLYN
D. RICHEY;

        Defendants.

NO. CIV. S-04-0206 FCD/DAD

MEMORANDUM AND ORDER

----oo0oo----

This matter is before the court on plaintiff Sherie White's ("plaintiff") and defendants Walter and Carolyn Richey's ("defendants")[1] cross-motions for summary judgment.[2] The motions present only one disputed issue: whether the subject facility, defendants' gas station and convenience store, the River Mart, has "architectural barriers" within the meaning of the Americans

---

[1] Defendant Divine Investments, Inc. was dismissed per the parties' stipulation of March 24, 2004.

[2] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. L.R. 78-230(h).

1

with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA").[3]  As to all other issues under the ADA, namely, whether plaintiff is "disabled," whether the River Mart is a place of "public accommodation," and whether it is "readily achievable" for any architectural barriers to be removed, the parties agree plaintiff can sustain her burden of proof.[4]  Id. at § 12182(a), (b)(2)(A)(iv).  As such, whether architectural barriers exist at the River Mart is determinative of who prevails on the motion.

For the reasons set forth below, the court finds that plaintiff lacks standing to challenge a majority of the alleged barriers, and with respect to the barriers properly raised by plaintiff, defendants have shown that the so-called "barriers" do not constitute substantive violations of the ADA and/or have been remedied.[5]

---

[3] Plaintiff also moves for damages pursuant to the Unruh Civil Rights Act, California Civil Code § 51 *et seq.*  Said entitlement to damages is predicated on a finding of a violation of the ADA.

[4] The ADA was enacted by Congress in 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).  Title III of the ADA prohibits discrimination by private entities against persons with disabilities in places of public accommodation.  42 U.S.C. § 12182(a).  Discrimination includes "failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable."  42 U.S.C. § 12182(b)(2)(A)(iv); Pickern v. Holiday Quality Foods Inc., 293 F.3d 1133, 1135 (9th Cir. 2002).  To succeed on a claim of discrimination due to an architectural barrier, plaintiff must prove that: (1) she is disabled; (2) the subject facility is a place of "public accommodation;" (3) the existing facility contains an architectural barrier prohibited by the ADA; and (4) removal of the barrier is readily achievable. Parr v. L & L Drive-Inn Rest., 96 F. Supp. 1065, 1085 (D. Haw. 2000).

[5] Plaintiff's motion to strike defendants' opposition as untimely, filed September 9, 2005, is DENIED.

2

**BACKGROUND**

The River Mart, located at 222 Jibboom Street, Sacramento, California, was constructed in 1984-85. (Pl.'s Resp. to Defs.' SUF ["Defs.' SUF"], filed Sept. 8, 2005, ¶ 1.)  In 1996, the coffee service area at the River Mart was remodeled, which consisted of moving equipment, installing new base cabinets and counters, and installing plumbing and electrical work for coffee and beverage dispensers. (Id. at ¶ 2.)

On December 7, 2003, plaintiff and her father, James Abel, stopped at the River Mart to purchase gas and food. (Defs.' Resp. to Pl.'s SUF ["Pl.'s SUF"], filed September 9, 2005, ¶ 5.) Plaintiff lives in Corning, California, approximately 115 miles from Sacramento, but makes frequent trips to Sacramento. (Id. at ¶ 4.)  Plaintiff is a quadriplegic, who is unable to walk or stand and has minimal use of her hands. (Id. at ¶s 1-2.)  She uses a wheelchair for mobility, and a wheelchair lift-equipped van when traveling in public. (Id. at ¶ 3.)  During her visit to the River Mart, plaintiff alleges she encountered numerous architectural barriers at the facility that prevented her from enjoying full and equal access to the goods and services offered. (Id. at ¶ 6.)  Said barriers, totaling 42 in number, are described in Exhibit A to the first amended complaint. (FAC, filed April 12, 2005, at ¶ 10 ["To the extent known by White, attached as Exhibit A to this complaint is a true and accurate list (with photos) of barriers that denied her access at the Station."].)  These barriers include such items as an inaccessible ramp into the store (Pl.'s SUF, ¶ 8) and too narrow product aisles inside the store (Id. at ¶ 9).

1  Some months later, plaintiff again visited the River Mart
2  and alleges that no barriers had been removed and that the
3  facility remained inaccessible to her. (Id. at ¶ 13.) She
4  alleges that as a result, despite her desire to visit the River
5  Mart on her trips to Sacramento, she has been deterred from doing
6  so because she believes barriers exist making it not only
7  "frustrating and humiliating for [her], but also dangerous as
8  well." (Id. at ¶ 14; Pl.'s Decl., filed Aug. 22, 2005, ¶ 14.)
9  Defendants dispute that any legitimate barriers identified
10 by plaintiff in the first amended complaint remain at the
11 facility. (Pl.'s SUF, ¶s 13-14.) Defendants maintain they have
12 removed all valid barriers to accessibility identified by
13 plaintiff in the complaint, and that the work was completed in
14 June 2004. (Id.)

**STANDARD**

16 The Federal Rules of Civil Procedure provide for summary
17 adjudication when "the pleadings, depositions, answers to
18 interrogatories, and admissions on file, together with
19 affidavits, if any, show that there is no genuine issue as to any
20 material fact and that the moving party is entitled to a judgment
21 as a matter of law." Fed. R. Civ. P. 56(c). One of the
22 principal purposes of the rule is to dispose of factually
23 unsupported claims or defenses. Celotex Corp. v. Catrett, 477
24 U.S. 317, 325 (1986).

25 In considering a motion for summary judgment, the court must
26 examine all the evidence in the light most favorable to the
27 non-moving party. United States v. Diebold, Inc., 369 U.S. 654,
28 655 (1962). If the moving party does not bear the burden of

4

1 proof at trial, he or she may discharge his burden of showing
2 that no genuine issue of material fact remains by demonstrating
3 that "there is an absence of evidence to support the non-moving
4 party's case." Celotex, 477 U.S. at 325. Once the moving party
5 meets the requirements of Rule 56 by showing there is an absence
6 of evidence to support the non-moving party's case, the burden
7 shifts to the party resisting the motion, who "must set forth
8 specific facts showing that there is a genuine issue for trial."
9 Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).
10 Genuine factual issues must exist that "can be resolved only by a
11 finder of fact, because they may reasonably be resolved in favor
12 of either party." Id. at 250.

13 In judging evidence at the summary judgment stage, the court
14 does not make credibility determinations or weigh conflicting
15 evidence. See T.W. Elec. v. Pacific Elec. Contractors Ass'n, 809
16 F.2d 626, 630-31 (9th Cir. 1987) (citing Matsushita Elec. Indus.
17 Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). The
18 evidence presented by the parties must be admissible. Fed. R.
19 Civ. P. 56(e). Conclusory, speculative testimony in affidavits
20 and moving papers is insufficient to raise genuine issues of fact
21 and defeat summary judgment. See Falls Riverway Realty, Inc. v.
22 City of Niagara Falls, 754 F.2d 49, 57 (2d Cir. 1985); Thornhill
23 Publ'g Co., Inc. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979).

**ANALYSIS**

25 **A.   Standing**

26 Preliminarily, the court must determine what alleged
27 architectural barriers are properly at issue on the motions.
28 Defendants argue, on standing grounds, that plaintiff is confined

to raising only those barriers alleged in Exhibit A to the first amended complaint. To the contrary, plaintiff alleges that she may also rely on those barriers not described in Exhibit A but disclosed by her expert, Joe Card ("Card"), in his expert report and declaration. (Pl.'s SUF, ¶ 15.)  These latter barriers are described in plaintiff's statement of undisputed facts at paragraphs 15-38.  (Id. at ¶s 15-38; Card Decl., filed Sept. 5, 2005.)

Defendants' argument does not raise, as suggested by plaintiff, a question of "notice pleading" under Rule 8 of the Federal Rules of Civil Procedure, but rather plaintiff's Article III *standing* to assert relief for the alleged barriers. Plaintiff's counsel did not disclose that Judge David Levi, of this court, recently addressed the precise issue facing the court in this case and decided the issue contrary to plaintiff. Martinez v. Longs Drug Stores, 2005 WL 2072013 (E.D. Cal., August 25, 2005).[6]

In Martinez, Judge Levi considered "whether a plaintiff could have standing where the plaintiff neither encountered nor knew of a particular barrier prior to filing the complaint." Id. at *3.  Plaintiff Martinez conceded that with respect to certain barriers he did not personally encounter them on his visits to the store, but nonetheless sought recovery for them because his expert later identified them as barriers in his expert report. Id. at *1.  Martinez argued that under the Eighth Circuit's decision in Steger v. Franco, 228 F.3d 889, 893-94 (8th Cir.

---

[6] Plaintiff Martinez was also represented by plaintiff's counsel here, Lynn Hubbard, III.

6

2000), whose holding was adopted by the Ninth Circuit in Pickern v. Holiday Quality Foods, Inc., 293 F.3d 1133, 1138 (9th Cir. 2002), he had standing to sue for those later-discovered barriers by his expert. Judge Levi disagreed. While he found that under Steger, Martinez would prevail,[7] he held that Steger was not the "law of this circuit" as the Ninth Circuit did not adopt Steger in Pickern. Id. at *3.

> The *Pickern* court was faced with a very different factual scenario than that presented in *Steger* and the present case. The plaintiff in *Pickern* actually encountered all of the barriers that he sought to remedy in his suit. The question for the court was whether he had to personally encounter the barriers within the year prior to filing his complaint in order to show a concrete and particularized injury. The court held that the plaintiff could establish an injury in fact by demonstrating that he knew of the barriers and was deterred from visiting during the statute of limitations period. The court discussed *Steger* only by way of general comparison.

Id. at *3 (internal citations omitted). As such, Judge Levi considered the issue anew, ultimately rejecting Steger as "fundamentally incompatible with . . . constitutional standing principles." Id. at *4. This court finds Judge Levi's analysis and holding persuasive and applies it here. Id. ("In short, a plaintiff in an ADA action does not, by the mere filing of a lawsuit alleging one violation, obtain the right to perform a wholesale audit of the defendant's premises.") As such,

---

[7] In Steger, the court held that a blind plaintiff who attempted, but was unable, to gain access to a first-floor bathroom had Article III standing to seek removal of all barriers in the building relating to his disability. 228 F.3d at 893-94. The court reasoned that it would be "inefficient" and "impractical" to limit injunctive relief to those barriers which the plaintiff actually encountered or had knowledge of at the time the complaint was filed. Id.

7

> [While] [c]onstutional standing principles do not require that a plaintiff actually encounter every barrier he seeks to remove, . . . [he] must, at a minimum, know of, or have reason to know of, and be deterred by, the barrier at the time the complaint is filed in order to allege an injury from that barrier.

Id.

Here, defendants are correct that plaintiff has standing to sue only for those barriers identified in Exhibit A to the first amended complaint because it is only those barriers which she actually encountered and/or had reason to know of at the time of the filing of the complaint. The alleged barriers later discovered by her expert were not known by her at the time of the filing of the complaint, nor are they sufficiently similar or related to barriers identified in Exhibit A, and therefore she lacks standing to sue for them.[8] Id. at *4 n. 6 (recognizing that knowledge of a barrier need not be direct, but can be circumstantial or inferential provided a plaintiff has a "reasonable belief" that other like barriers are present in similar features of the facility).

---

[8] For example, with respect to alleged barriers present near defendants' gas pumps, plaintiff testified at deposition that she had her father "pump the gas and do all that." (White Dep., 9:22.) Therefore, by her own admission, she did not encounter and/or have any knowledge of her expert's claimed barriers in the fuel pump area. Likewise, plaintiff testified she never visited or used defendants' restroom because her father told her "it would be impossible for [her] to get back there and use it." (White Dep., 10:21-22.) Consequently, plaintiff cannot raise alleged barriers inside the restroom (items 4r-4x of the Card Declaration). Finally, with respect to alleged barriers that certain items within the store were out of reach (item 4m of the Card Decl.), plaintiff testified that the checkout counter was too high for her and she had to wait for her father to come and pay for her in line, but she never testified that the items she selected were too difficult to reach. As such, plaintiff also lacks standing to allege the barriers claimed in item 4m of the Card Declaration.

Accordingly, the court reaches the merits of only those barriers raised by the parties on the instant motion which were identified by plaintiff in Exhibit A to the first amended complaint. In that regard, eight such barriers are at issue[9] as they are the only barriers identified in Exhibit A that plaintiff's expert asserts remain in violation of the ADA. (Card Decl. at 2-5.)[10] As to all other alleged barriers raised by plaintiff, for the first time, through her expert's report and declaration, summary judgment is GRANTED in favor of defendants.

**B.   Subject Barriers**

The ADA does not provide a definition of what constitutes an architectural barrier. Rather, the text of the ADA sets out only broad principles for the elimination of discrimination against persons with disabilities. The United States Department of Justice, however, is charged by statute with the implementation of Title III of the ADA and Congress empowered it to issue specific regulations for compliance. 42 U.S.C. 12186(b). In

---

[9] Said barriers include: (1) "No separate van accessible sign" (Item 4 in Exh. A); (2) "No accessible route of travel" from the parking area (Item 10 in Exh. A); (3) "No exterior route of travel from the property border" (Item 11 in Exh. A); (4) "Public telephone has no ISA [International Symbol of Accessibility]" (Item 15 in Exh. A); (5) "Floor mats are not attached" (Item 16 in Exh. A); (6) "Entrance door ISA not mounted 60 inches center line from the floor (Item 17 in Exh. A); (7) "No accessible route through store" (Item 21 in Ex. A); and (8) "Toliet tissue center [in restroom] not mounted below grab bar" (Item 36 in Exh. A).

[10] Plaintiff's expert does not opine in his declaration has to any other alleged barriers identified in Exhibit A. Moreover, plaintiff has not disputed that those other barriers described in Exhibit A and not raised by her expert in his declaration, were indeed remedied by defendants. Instead, plaintiff bases her motion largely on the later-discovered barriers revealed by her expert. As stated above, as to those barriers, plaintiff lacks standing to seek relief.

accordance with this mandate, the Department developed its Final Rule implementing Title III of the ADA, codified at 28 C.F.R. Pt. 36.  Attached as Appendix "A" to that Final Rule is the Americans With Disabilities Act Accessibility Guidelines ("ADAAG"), promulgated by the United States Access Board as guidelines for construction of new facilities or the remodeling of existing facilities.  The Final Rule, with ADAAG attached, therefore, is the controlling building code/access standard for implementation of Title III requirements.  Indeed, courts have held that the ADAAG provides the standard to determine if a facility has a barrier.[11]  D'Lil v. Anaheim Hotel Partnership, 43 Fed. Appx. 96, 97 (9th Cir. 2002); see also Access Now. Inc. v. South Florida Stadium Corp., 161 F. Supp. 2d 1357, 1368 (S.D. Fla. 2001); D'Lil v. Stardust Vacation Club, 2001 WL 1825832, *4-*5 (E.D. Cal., December 21, 2001); Parr v. L&L Drive-Inn Restaurant, 96 F. Supp. 2d 1065, 1086 (D. HI 2000).

Pursuant to 28 C.F.R. § 36.304, architectural barriers must be removed where removal is "readily achievable."  "Readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense."  Id. at § 36.304(a).  As applied to this case, the facility was constructed in 1984-85, prior to the ADA's enactment in 1990.  To

---

[11] Here, plaintiff primarily relies on the ADAAG to establish the presence of barriers at the River Mart. However, she also relies on California Building Code ("CBC") standards (Cal. Code of Regs., Part 24), as *additional* evidence of barriers to accessibility. Plaintiff has alleged a claim for statutory damages under California's Unruh Civil Rights Act and Disabled Persons Act; under these Acts, any violation of the ADA also establishes violation of these state statutes. As such, the court's analysis focuses on the purported ADAAG violations.

10

the extent any aspects of the facility are unchanged from the original construction, any "barriers" as determined by the ADAAG must be removed to the extent "readily achievable." In 1996, the counters and cabinets in the beverage dispenser area of the facility were remodeled; said remodeling was required to be compliant with the ADAAG. Finally, as to defendants' removal efforts since the filing of this action, those efforts had to comply with the ADAAG (with the exception of the "path-of-travel" standards discussed below).

As to the eight alleged barriers at issue (Items 4, 10, 11, 15, 16, 17, 21, and 36 of Exhibit A), Items 4, 11, 15-17 and 36 remain in the same condition as at the time of the filing of the complaint. Defendants contend those *claimed* barriers do not, in fact, constitute substantive violations of the ADA. Items 10 and 21, defendants concede were "architectural barriers" under the ADA, but they maintain the barriers have been properly corrected.

**1.   "No separate van accessible sign" (Item 4)**

Despite the words "Van Accessible" plainly appearing below the ISA on the parking signage, plaintiff asserts an ADAAG violation because the "Van Accessible" wording does not appear on a *separate* sign from the ISA depicting a person in a wheelchair. (Ex. A to FAC, Photo #3 [depicting the relevant sign].) ADAAG 4.6.4 provides:

> Accessible parking spaces shall be designated as reserved by a sign showing the symbol of accessibility . . . . Spaces complying with 4.1.2(5)(b) shall have an additional sign "Van-Accessible" mounted below the symbol of accessibility. Such signs shall be located so they cannot be obscured by a vehicle parked in the space.

11

Plaintiff reads the requirement of an "additional" sign as mandating a physically separate sign from the ISA sign. As support, plaintiff cites to the Department of Justice's Design Details: Van Accessible Parking Spaces (Aug. 1996) (Pl.'s Reply Appendix, filed Sept. 16, 2005, at 22-24.) However, said document, while depicting an *example* sign for a van accessible parking space with two separate signs (one with the ISA depicting a wheelchair and one with the words "Van Accessible"), it does not mandate two such signs. Indeed, one reference in the document is to *a* "sign with [ISA] *and* 'van accessible' [which] designates van accessible parking." Id. at 24 (emphasis added). As the photograph of the sign at issue here clearly demonstrates, the creation of a *separate* sign containing the words "van accessible" would add nothing to the clarity of the signage. Defendants' sign complies with the ADAAG, by providing "additional" signage with the words "van accessible," and is not contrary to Design Details; therefore, defendants are entitled to summary judgment on this issue.

### 2.   "No accessible route of travel from parking [area]" (Item 10)

In her complaint, plaintiff alleged that there was no accessible route provided from the parking lot to the store. In response, defendants repaired the curb ramp from the parking lot to the sidewalk in front of the store to make it ADAAG-compliant (ADAAG § 4.7.3 [requiring said ramp to be a minimum of 36 inches wide]). (Defs.' SUF, ¶ 10.)

Plaintiff cannot dispute that the ramp is now ADAAG-compliant, in that it is, according to her own expert, 44 inches

12

wide. (Id. at ¶ 12.) Defendants are entitled to summary judgment on this issue.

### 3. "No exterior route of travel from the property border" (Item 11)

In Item 11 in Exhibit A, plaintiff alleges "[n]o exterior route of travel from the property border." However, it is not apparent, from the photographs attached to Exhibit A or plaintiff's expert's report, to what this description refers. The photographs attached to Exhibit A do not show an inaccessible route from the border of the property, and Card's report shows only a photograph of the public sidewalk. Because there is no discernable relevant "barrier" at issue, defendants' motion must be granted as to this issue; plaintiff has not sustained her burden of proof.[12]

### 4. "Public telephone has no ISA" (Item 15)

Relying on ADAAG § 4.30.7, plaintiff claims that the River Mart's public telephone must have an ISA. Section 4.30.7, however, requires only that "Facilities and elements required to be identified as accessible by 4.1 shall use the international symbol of accessibility." Section 4.1.1 in turn provides that 4.1 applies only to "[a]ll areas of newly designed or newly constructed buildings and facilities and altered portions of

---

[12] If plaintiff is attempting to allege in Item 11, that a separate path of travel must be furnished for wheelchairs that does make use of any vehicle ways, her claim is unavailing. The advisory notes to ADAAG § 206.1 make clear that: "Access from site arrival points may include vehicular ways." Finally, the court notes that plaintiff has not established that either the interior alterations in 1996, nor the removal of barriers work by defendants in 2004, triggered the "path of travel" requirements of 28 C.F.R. § 36.403 with regard to the whole property. 28 C.F.R. § 36.304(d)(1); 36.402(a)(1) and (b)(2).

1 existing buildings and facilities."

2  Here, plaintiff offers no evidence that the telephone is
3 part of any new construction or altered area of the existing
4 facility; accordingly, there is no requirement that it have an
5 ISA.  Defendants are entitled to summary judgment on this issue.

6  **5.  "Floor mats are not attached" (Item 16)**

7  Plaintiff argues that none of the "*carpeted* floor mats"
8 inside the store are securely attached, violating ADAAG § 4.5.3.
9 Said section deals with "carpeting."  It provides:

> If carpet or carpet tile is used on a ground or floor
> surface, then it shall be securely attached; have a firm
> cushion, pad, or backing, or no cushion or pad; and have a
> level loop, textured loop, level cut pile, or level
> cut/uncut pile texture. The maximum pile thickness shall be
> 1/2 in (13 mm) (see Fig. 8(f)).  Exposed edges of carpet
> shall be fastened to floor surfaces and have trim along
> the entire length of the exposed edge. Carpet edge trim
> shall comply with 4.5.2.

15 Thus, the section has no application to "floor mats."  See Access
16 Board, "Frequently Asked Questions," http://www.access-
17 board.gov/adaag/about/FAQ.htm.  Question 1 under section 4.5 of
18 that document reads, along with its answer:

> Q: Are the mats placed on the floor of my office lobby
> during wet weather considered carpet that must be firmly
> attached (ADAAG 4.3 Accessible route)
>
> A: No, such mats are "furnishings" not covered by ADAAG.
> However, section 36.211 of the [DOJ] rule requires that
> accessible features be maintained so such furnishings
> cannot degrade the accessible route.  [A]s long as [so-
> called "walk-off mats"] are stable and do not pose a
> tripping hazard, they may actually improve the accessibility
> of a surface.  On the other hand, loose throw rugs, for
> example, could decrease the accessibility of a surface.

26 The mats at issue, depicted in photographs in plaintiff's
27 expert's report, are clearly not "carpet" of any sort, but are
28 mats placed on the linoleum floor and thus "furnishings" not

14

covered by the ADAAG. Moreover, plaintiff has not provided any evidence that said mats are unstable or loose or that they provide a tripping hazard. Indeed, they do not appear to degrade the accessible route but rather are used to increase traction on the floor.[13] As such, there is no basis for plaintiff's ADA claim regarding this issue. Defendants are entitled to summary judgment.

### 6. "Entrance door ISA not mounted 60 inches center line from the floor" (Item 17)

Plaintiff concedes that the ADAAG does not contain a height requirement for such signage (Defs.' SUF, ¶ 15),[14] but argues nonetheless an ADA violation on the basis of the CBC (CBC § 2-1720(g) (1984 version) in effect at the time of the River Mart's construction).[15] Plaintiff's reliance on the CBC is inappropriate. First, plaintiff raised the *1984* CBC provisions for the first time in her reply, and as such, the argument is not properly considered herein. Second, her expert does not address the 1984 provisions or provide an opinion regarding how those regulations apply to the River Mart's construction; instead, Card's citation to the CBC, if at all, is to the *2001* CBC.

---

[13] Plaintiff objects on the grounds of "untimeliness" to defendants' expert's opinion (provided in his declaration submitted on the motions), that the floor mats were "heavy," "rubber-backed" mats, not carpeting, that "improve[d] traction." (Defs.' SUF, ¶ 14.) However, the court does not rely for its decision on defendants' expert's opinion. The nature of the mats at issue is apparent, without reference to expert opinion, from the photographs taken by *plaintiff's expert*.

[14] See ADAAG 4.1.2(7)(c); 4.30.6; 4.30.7.

[15] It is noteworthy that signage in this instance is not required at all by the ADAAG (§ 4.1.2(7)); defendants simply elected to provide such signage.

15

Finally, even if the court considered said provisions, like the ADAAG, while the CBC may require such signage, it does not contain a specific height requirement. (Pl.'s Appendix in Supp. of Reply, filed Sept. 16, 2005, at 35.) Thus, for these alternative reasons, defendants are entitled to summary judgment on this issue.

### 7. "No accessible route through store" (Item 21)

Plaintiff maintains that the access aisles between shelving inside the River Mart are too narrow (ADAAG § 4.3.3 requires a 36 inch minimum). Plaintiff's argument, however, ignores her expert's own report, which identifies at least three aisles within the store that are more than 36 inches wide. Defendants correctly point out that ADAAG 4.3.2(2) requires *only* that "at least one accessible route [exist to] connect accessible buildings, facilities, elements, and spaces that are on the same site." Here, by plaintiff's expert's own findings, more than one such route exists and therefore, there is no issue of fact regarding compliance with the ADAAG.[16] Defendants are entitled to summary judgment on this issue.[17]

---

[16] Card's additional citation to CBC § 1133B.6.2 (requiring a minimum width of 44 inches) is inapposite; the citation is to the 2001 CBC which would be inapplicable to this facility constructed in 1984-85 and remodeled in 1996 only with respect to the beverage dispenser area.

[17] In opposition to defendants' motion, plaintiff concedes the facility is in compliance with the ADAAG but argues nonetheless a violation of the ADA because the facility, according to plaintiff, is still specifically inaccessible to her due to the type of wheelchair she uses (which she describes is akin to a small "go-cart"). (Pl.'s Supp. Decl., filed Sept. 9, 2005, ¶ 6-7.) Plaintiff's argument is unavailing; the law does not require defendants to make their facility accessible to the specific needs of a particular disabled person. Rather, the ADAAG sets the reasonable standard of care which has been

16

**8.   "Toilet tissue center not mounted below grab bar" (Item 36)**

Plaintiff does not oppose an award of summary judgment in favor of defendants on this issue.[18]  In her reply, "she agrees that she lacks standing regarding the placement of the toilet dispenser, and doesn't oppose summary judgment on this issue." (Pl.'s Reply, filed Sept. 16, 2005, at 10:4-5.)  As such, defendants prevail on this issue.

### CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED.  Plaintiffs' cross-motion for summary judgment is accordingly DENIED.  The Clerk of the Court is directed to close this file.

DATED: October 7, 2005

                                        /s/ Frank C. Damrell Jr.
                                        FRANK C. DAMRELL, Jr.
                                        UNITED STATES DISTRICT JUDGE

---

complied with in this case.

[18]   Defendants moved for summary judgment as to this item on two alternative grounds: (1) standing (despite plaintiff's identification of the item in Exhibit A) and (2) the inapplicability of ADAAG § 4.17.3 (arguing that said section applies to interior toilet stalls, not "water closets," like the restroom at issue here which is a complete, single toilet restroom with no stalls or partitions of any kind).